# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| BLUE STAR SPORTS HOLDINGS, INC., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No.  4:22-CV-098 |
| | § | Judge Mazzant |
| FEDERAL INSURANCE COMPANY, | § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Partial Motion to Dismiss Counts II-V of Plaintiff's First Amended Complaint (Dkt. #41).[1]  Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part.**

## BACKGROUND

This case arises out of an insurance agreement between the parties and a dispute regarding coverage.  The lawsuit was brought by the insured, Plaintiff Blue Star Sports Holdings, Inc. ("Blue Star"), against the insurer, Defendant Federal Insurance Company ("Federal") (Dkt. #33).  Blue Star alleges that Federal breached the parties' insurance policy when it denied coverage and failed to pay Blue Star for three separate claims that it made to Federal for over six million dollars in theft-related losses caused by Blue Star employees (Dkt. #33 ¶¶ 6–45).

Blue Star is a sports media business that offers services such as sports and league management tools, camp and event management solutions, team recruiting management, sports funding and payment solutions, and other services designed to assist youth, college, and

---

[1] The Court recognizes that in the title of the motion, Federal requests that the Court dismiss Counts Two through Five in the First Amended Complaint.  However, in Blue Star's First Amended Complaint, there are only four counts listed (Dkt. #33).  Despite the title, the Court will treat the motion as asking the Court to dismiss Counts Two through Four.

professional athletes, as well as parents and volunteers (Dkt. #33 ¶ 6). On August 14, 2017, Blue Star purchased an insurance policy (Dkt. #48, Exhibit 1) (the "Policy") with Federal. The Policy, which was effective from March 31, 2017, to March 31, 2018, includes a "Employee Theft" provision. This provision provides coverage to Blue Star and its subsidiaries for losses sustained due to theft by an employee (Dkt. #48, Exhibit 1 at pp. 20–34).

After entering into the Policy, Blue Star discovered that two of its employees had embezzled over six million dollars of company funds through a series of illegal wire transfers (Dkt. #33 ¶¶ 10–14). Following the thefts, Blue Star submitted a claim under the Policy on June 12, 2020, seeking to recover the policy limit of three million dollars (Dkt. #33 ¶ 21). On March 30, 2021, after several requests for further information, and Blue Star's subsequent compliance with such requests, Federal denied Blue Star's claim (Dkt. #33 ¶¶ 21–31). On July 1, 2021, Blue Star submitted a supplemental claim, to which Federal refused to cover with no investigation or stated reason as to why it was denied (Dkt. #33 ¶ 30). Throughout the discovery process, Blue Star learned of additional thefts committed by the same employees as alleged in the First Amended Complaint (Dkt. #33 ¶ 40). On August 4, 2022, Blue Star filed a second supplemental claim with Federal (Dkt. #33 ¶ 45). Federal has yet to pay Blue Star for any of its three claims.

On February 11, 2022, believing that Federal's denials were unreasonable and in bad faith, Blue Star sued Federal for the following causes of action: (1) breach of contract ("Count One"); (2) breach of the common law implied covenant of good faith and fair dealing ("Count Two"); (3) statutory bad faith under Chapter 541 of the Texas Insurance Code ("Count Three"); and (4) failure to timely pay an insurance claim under Chapter 542 of the Texas Insurance Code, also known as the "Texas Prompt Payment of Claims Act ("Count Four") (Dkt. #33 ¶¶ 47–78).

On August 29, 2022, Federal filed the present motion pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, seeking dismissal of Counts Two through Four, Blue Star's common law and statutory bad faith claims and Blue Star's claim under the Texas Prompt Payment of Claims Act (Dkt. #41).  On September 12, 2022, Blue Star filed its response (Dkt. #48).  On September 19, 2022, Federal filed a reply (Dkt. #50).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  A court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The court must then determine whether the complaint states a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Federal requests a partial dismissal under Rule 12(b)(6) on two principal grounds. First, Federal argues that Blue Star's extracontractual common law and statutory bad faith claims in Counts Two and Three should be dismissed because Blue Star "fail[ed] to plead an independent injury" aside from denial of policy benefits (Dkt. #41 at p. 5). Second, Federal argues that Blue Star's claims for violations of the Texas Prompt Payment of Claims Act in Count Four should be dismissed because disputes over fidelity bonds are exempt under the Act (Dkt. #41 at p. 9). The Court will address each argument in turn.

4

## I.      Extracontractual Bad Faith Claims

As noted, in addition to its breach of contract claim, Blue Star sued Federal for multiple extracontractual violations, including bad faith under the common law as well as bad faith under Chapter 541 of the Texas Insurance Code (Dkt. #33 ¶ 67) (citing TEX. INS. CODE §§ 541.060(a)(1), (a)(2)(A), (a)(3), (a)(7), 541.061).  The parties disagree on what Blue Star must show to recover on its extracontractual bad faith claims.

Because this case is before the Court on diversity grounds (*see* Dkt. #33 ¶¶ 2–4), Texas substantive law applies.  *See Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co*., 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (recognizing the long-standing principle that federal courts sitting in diversity cases apply state substantive law and federal procedural law).  Under Texas law, an insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed.  *RSUI Indem. Co. v. The Lynd Co*., 466 S.W.3d 113, 118 (Tex. 2015).  "In addition to an insurer's contractual obligations, the common law and the Texas Insurance Code impose extracontractual duties on insurers related to the handling and processing of insurance claims."  *Burgess v. Allstate Fire & Cas. Ins. Co*., 641 S.W.3d 474, 476 (Tex. App.—Austin 2021, pet. denied).  "Under the common law, an insurance company owes a duty of good faith and fair dealing to its insured in its handling and processing of a claim for benefits."  *Id.* (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)).  Similarly, Chapter 541 of the Texas Insurance Code creates statutory liability if an insurer engages in bad faith or unfair settlement practices.  *See* TEX. INS. CODE § 541.060.  Thus, Texas law permits an insured to bring both contractual claims for breach of an insurance policy as well as extra-contractual claims under the common law and the Texas Insurance Code.  However, whether an insured may recover on its extra-contractual claims is more complicated question.

As both parties mention in their briefing, the Texas Supreme Court has established five rules that govern the relationship between contractual and extra-contractual insurance claims. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). Four of those rules are relevant to the present case. First, under the "general rule," an insured cannot recover policy benefits as damages for an insurer's statutory violation if the insured has no right to the benefits under the policy. *Id*. at 490. Second, under the "entitled-to-benefits" rule, if an insured does have a right to receive benefits under the insurance policy, the insured can recover those benefits as actual damages under the Insurance Code "if the insurer's statutory violation causes the loss of the benefits." *Id.* at 495. Third, under the "independent injury rule," "if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured the receive benefits." *Id*. at 499. Fourth, under the "no-recovery rule," a natural corollary to the above rules, an insured cannot recover for a statutory violation if the insured had no entitlement to benefits under the insurance policy and sustained no independent injury. *Id.* at 500.

Thus, as set forth in *Menchaca*, there are two paths an insured may take to establish the damages caused by an insurer's violation of the Texas Insurance Code or the common law duty of good faith and fair dealing. "The insured must establish either (1) 'a right to receive benefits under the policy' or (2) 'an injury independent to a right to benefits.'" *In re State Farm Mutual Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021) (quoting *Menchaca*, 545 S.W.3d at 500). "As *Menchaca* made clear, there is no alternative to these two pathways." *Id.* at 873. Put differently, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 489 (emphasis in original).

Federal contends that Blue Star's extracontractual bad faith claims must be dismissed because Blue Star "can only pursue such claims if it sustained an independent injury," which Federal alleges Blue Star has not pleaded (Dkt. #41 at p. 5; Dkt. #50 at pp. 2–3).  However, Federal's contention is outdated, as it is not supported by *Menchaca* and the rules listed above. *Compare Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, No. H-15-1397, 2017 WL 1106271, at *5 (S.D. Tex. Mar. 24, 2017) (deciding that Metro is required to show an injury independent of the insurer's breach of contract to proceed on extracontractual claims pre-*Menchaca*) *with Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 451 (5th Cir. 2018) (stating that the insured need not show any injury independent from the denied benefits in order to obtain such extracontractual damages post-*Menchaca*).  *Menchaca* provides two alternative paths a plaintiff may assert to succeed on extracontractual claims.  545 S.W.3d at 500.  In other words, a plaintiff is required to pursue success through at least one path; not both.  While Blue Star certainly could have pleaded an independent injury to support its extracontractual claims, it was not required to, as Federal argues in the pending motion.

The Fifth Circuit affirmed as much when it re-assessed the application of the independent injury rule in light of *Menchaca.  See Lyda* 903 F.3d at 435.  The Fifth Circuit explained that the independent injury rule "does not restrict the damages an insured can recover under the entitled-to-benefits rule."  *Id.* at 452.  Rather, the independent injury rule limits the recovery of *other* damages that "flow" or "stem" from a mere denial of policy benefits, such as damages for emotional distress.  *Id.* (emphasis in original).  "When an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery *unless the policy entitles the insured to those benefits.*" *Menchaca*, 545 S.W.3d at 500 (emphasis added).  Therefore, when an insured establishes a right to receive benefits under

the insurance policy[,] he can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of benefits." *In re State Farm*, 629 S.W.3d at 873 (quoting *Menchaca*, 545 S.W.3d at 499).  Thus, an insured is required to plead an independent injury only when the insured seeks to recover for "other damages" that the insured does not have the right to under the policy.  *See Menchaca*, 545 S.W.3d at 489; *Lyda*, 903 F.3d at 452.

That is not the case here.  Rather, Blue Star asserts that it does have a right to benefits under the Policy, and those are the damages Blue Star seeks (Dkt. #33 at pp. 19–20) ("[Blue Star] respectfully requests . . . [o]n violations of Chapter 541 . . . an award of actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy").  Thus, if Blue Star can prevail in proving an entitlement to benefits under the Policy, "the entitled-to-benefits rules allows [Blue Star] to recover [the Policy's] benefits 'as actual damages" under the Insurance Code.  *Lyda*, 903 F.2d at 542 (quoting *Menchaca*, 545 S.W.3d at 495); *see also* Tex. Ins. Code § 542.152 (allowing insured to recover treble the amount of policy benefits received as "actual damages").  As such, Blue Star is under no obligation to plead an independent injury.  *See St. Luke's United Methodist Church v. Church Mutual Ins. Co.*, No. 2:20-CV-00053, 2022 WL 980352, at *7 (S.D. Tex. Mar. 31, 2022) (stating that where the damages sought by the insured are the policy benefits and not damages outside of the allegedly denied policy benefits, the insured is not required to plead or satisfy the independent injury rule).  And whether Blue Star may recover actual damages by demonstrating its entitlement to benefits is "without limitation from the independent-injury rule."  *Lyda*, 903 F.3d at 453.

In short, the fact that Blue Star "[has] a breach of contract action against [Federal] does not preclude a cause of action under . . . the [Texas] Insurance Code" or the common law, so long as Blue Star satisfies the entitled-to-benefits rule as set out in *Menchaca*.  *See Vail v. Tex. Farm*

*Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988), *reaffirmed by Menchaca*, 545 S.W.3d at 496–97.  Having reviewed Blue Star's complaint, the Court finds that Blue Star has sufficiently pleaded an entitlement to benefits under the Policy.  Accordingly, the Court will deny Federal's claim that Blue Star's common law and statutory bad faith claims in Counts Two and Three must be dismissed under Rule 12(b)(6).

**II.    Texas Prompt Payment of Claims Act**

Blue Star asserts a claim against Federal under the Texas Prompt Payment of Claims Act in Count Four of the First Amended Complaint (Dkt. #33 at ¶¶ 72–78).  Federal contends that the employee theft provision of the Policy under which Blue Star claims coverage is a fidelity bond and is therefore exempt from the Texas Prompt Payment of Claims Act (Dkt. #41 at pp. 9–11).  Blue Star disagrees, claiming first that the Policy is titled a "Policy," not a "bond" (Dkt. #48 at p. 3).  Second, Blue Star contends that the employee theft provision is a "crime coverage policy," which is "not synonymous" with a fidelity bond (Dkt. #48 at p. 13).  In the alternative, if the Court finds both Federal's and Blue Star's interpretations to be reasonable, Blue Star asserts that any ambiguity must be resolved in Blue Star's favor (Dkt. #48 at p. 13).

In cases involving statutory construction, a court must begin its analysis with the text itself.  *Watt v. Alaska*, 451 U.S. 259, 265 (1981).  The Texas Prompt Payment of Claims Act "imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims."  *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019); *see also* TEX. INS. CODE §§ 542.056, 542.058(a).  The Texas Prompt Payment of Claims Act applies broadly to "any insurer," but expressly "does not apply to . . . fidelity, surety, or guaranty bonds."  *Id.* at §§ 542.052, 542.053(a).  Thus, if the employee theft provision at issue here is a fidelity bond, Blue Star's claims will be exempted from the Texas Prompt Payment of Claims Act.

9

However, the Texas Prompt Payment of Claims Act does not define "fidelity bonds." "When faced with an undefined statutory term, [the Court's] job is to apply the 'common, ordinary meaning'" of the term. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021) (citing *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)). "To do that, '[the Court] may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions.'" *Id.* (citing *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 448 (Tex. 2017)).

Accordingly, the Court begins with the common, ordinary meaning of "fidelity bond." Black's Law Dictionary defines a "fidelity bond" as "[a] bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust. – Also termed *blanket bond*; *fidelity-guarantee*; *fidelity-guarantee insurance*." BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis in original). While case law on the subject is sparse, courts that have addressed the definition of "fidelity bond" when interpreting the Texas Prompt Payment of Claims Act have adopted this ordinary definition. *See, e.g.*, *CapLOC LLC v. Liberty Mut. Ins. Eur. Ltd.*, No. 3:20-CV-3372, 2021 WL 2551591, at *10 (N.D. Tex. June 22, 2021); *RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:19-CV-1350, 2020 WL 1550798, at *3 (N.D. Tex. April 1, 2020); *Tex. Ass'n of Sch. Bds., Inc. v. Travelers Cas.*, No. 1:15-CV-369, 2016 WL 4257748, at *9 (W.D. Tex. July 7, 2016).

The Court finds the analysis conducted in *RealPage* as helpful in conducting its own analysis. 2020 WL 1550798, at *3–*5. In *RealPage*, the Northern District of Texas applied the term's ordinary definition to determine that an "employee theft" agreement was a fidelity bond. *Id.* There, the insured purchased a commercial crime policy that contained three insuring agreements—a computer fraud provision, a funds transfer fraud provision, and an employee theft

10

provision.  *Id.* at *1.  While the court found the computer fraud and funds transfer fraud provisions were not fidelity bonds, it held to the contrary for the employee theft provision.  *Id.*  at *5.  In doing so, the court explained that the employee theft agreement, which provided indemnity for losses caused by employees, "functions as a fidelity bond, while the [c]omputer [f]raud and [f]unds [t]ransfer [f]raud agreements provide different protection—protection from losses related to fraudulent transfers by outsiders who are not colluding with employees."  *Id.*  Importantly, in comparison to the employee theft provision, the computer fraud and funds transfer provisions did not mention coverage for losses caused by an employee or a fiduciary—"a distinctive feature of fidelity bonds."  *Id.*  The court concluded that the language of the computer fraud and funds transfer fraud provisions did not suggest that the parties "intended these two agreements to indemnify [the insured] for loss due to" employee or fiduciary misconduct.  *Id.*  Consequently, because the insured's claims related to the computer fraud and funds transfer fraud provisions, neither of which were fidelity bonds, the court held that the insured's claims were not exempted from the Texas Prompt Payment of Claims Act.  *Id.* at *4.

This issue was also raised in the *CapLOC* case.  2021 WL 2551591, at *10.  There, the insurance policy provided coverage for "direct financial loss to [the insured] caused by Dishonest Acts of a Mortgage Third Party concerning Mortgage Loans."  *Id.* at *1.  The court applied the ordinary definition of a fidelity bond as established in *RealPage* and determined that the provision at issue was not a fidelity bond for two main reasons.  *Id.* at *10.  First, a fidelity bond indemnifies the insured for losses caused by an employee or "other person holding a position of trust," but the court found it unclear "whether a 'Mortgage Third Party' may be a party 'holding a position of trust.'"  *Id.*  Second, the court doubted that the "Mortgage Third Party" provision was intended to be a fidelity bond because the policy contained another provision that specifically addressed losses

caused by an employee—the "kind of loss that fidelity bonds insure against." *Id.* Thus, just as in *RealPage*, because the insured's claims related to a provision that was not a fidelity bond, the court held that the insured's claims were not exempted from the Texas Prompt Payment of Claims Act. *Id.*

Finally, the Court looks to the *Texas Ass'n of Sch. Bds.* case. 2016 WL 4257748. In *Texas Ass'n of Sch. Bds.*, the insured claimed coverage under the parties' insurance policy for losses caused by employee theft. *Id.* The insurance policy contained the following provision in a section titled "Employee Theft":

> The Company will pay the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Theft or Forgery committed by an Employee, whether identified or not, acting alone or in collusion with other persons.

*Id.* at *9. The *Texas Ass'n of Sch. Bds.* court adopted the same ordinary definition of fidelity bond used in the Northern District of Texas cases and concluded that this provision was a fidelity bond because it indemnified the insured for losses caused by employee theft. *Id.* Accordingly, because the insured's claims for coverage relied on a fidelity bond provision, the court held the claims could not be brought under the Texas Prompt Payment of Claims Act. *Id.*

The policy language analyzed by the Western District of Texas is nearly identical to the Policy at issue in this case. Here, Section I of the Policy is titled "Insuring Clause," and contains a subsection that addresses losses caused by employee or fiduciary theft. Subsection A, titled "Employee Theft Coverage," reads as follows:

> The Company shall pay the Parent Organization for direct loss of Money, Securities or Property sustained by an Insured resulting from Theft or Forgery committed by an Employee acting alone or in collusion with others.

(Dkt. #48, Exhibit 1 at p. 21) (the "Employee Theft Provision"). In the First Amended Complaint, Blue Star specifically cites to the Employee Theft Provision to argue that Federal wrongfully

denied coverage for losses caused by Blue Star employees (Dkt. #33 ¶ 7).  Thus, what the Court must ultimately determine is if the Employee Theft Provision is a fidelity bond.

The Court finds that it is.  As stated, under the term's ordinary meaning, a fidelity bond indemnifies an insured "for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust."  BLACK'S LAW DICTIONARY (10th ed. 2014).  Thus, indemnification from losses caused by employees is "the kind of loss that fidelity bonds insure against," *CapLOC*, 2021 WL 2551591, at *10, and is "a distinctive feature of fidelity bonds." *RealPage*, 2020 WL 1550798, at *5.  Here, the Employee Theft Provision states that Federal will indemnify Blue Star for losses "resulting from Theft or Forgery committed by an Employee." Thus, the Employee Theft Provision—the operative provision as cited in Blue Star's complaint— is unambiguously intended to provide coverage to Blue Star for specific types of losses caused by an employee or a fiduciary.  This provision clearly meets the ordinary definition of a fidelity bond. *See Tex. Ass'n of Sch. Bds.*, 2016 WL 4257748, at *1.

Moreover, the Court is not persuaded by Blue Star's arguments to the contrary.  Whether the Policy is titled as a "crime coverage policy" as opposed to a "fidelity bond" is not dispositive of the Court's analysis.  Although "courts may consider the title of a contract provision or section to interpret a contract, 'the greater weight must be given to the operative contractual clause of the agreement.'"  *RSUI Indem. Co.*, 466 S.W.3d at 121 (citing *Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004)).  "Thus, titles and headings are not determinative, and when they are inconsistent with the plain meaning of the provision's operative language, [courts] afford greater weight to the operative language." *Id.*  The plain language of the Employee Theft Provision indicates that it was intended to be a fidelity bond regardless of the title used on the overall contract.  Additionally, the Court is not convinced that an insurance policy or provision cannot be

both a "commercial crime policy" and a "fidelity bond." *See, e.g.*, *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co.*, 876 F.3d 119, 125 (5th Cir. 2017) (describing a provision in a commercial crime policy that covered against employee theft as a fidelity bond).

Lastly, just like the insurance policy in *RealPage*, the Policy here contains additional provisions providing coverage for losses resulting from computer fraud and funds transfer fraud committed by a third party (Dkt. #48, Exhibit 1 at p. 22). *RealPage*, 2020 WL 1550798, at *5.  In construing these additional provisions along with an employee theft provision, the court in *RealPage* held that the employee theft provision was a fidelity bond because it covered losses caused by employees. *Id.*  However, the court concluded the insurer's claims were not exempted under the Texas Prompt Payment of Claims Act because the insurer's losses were based on third party conduct that, if covered, would fall under the computer fraud and funds transfer fraud provisions—not the fidelity bond provision. *Id.*  But here, unlike the insured in *RealPage*, Blue Star's claims are based on losses caused by an employee, not a third party (Dkt. #33 ¶¶ 1, 10–14). And pointedly, Blue Star asserts an entitlement to coverage in its complaint based only on the Employee Theft Provision (Dkt. #33 ¶ 7).  Thus, because the Court considers the Employee Theft Provision as a fidelity bond as understood through the term's ordinary meaning and as interpreted by the courts, Blue Star's claims are exempted from the Texas Prompt Payment of Claims Act.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Partial Motion to Dismiss Counts II-V of Plaintiff's First Amended Complaint (Dkt. #41) is **DENIED in part** and **GRANTED in part**.

It is further **ORDERED** that Plaintiff Blue Star Sports Holdings, Inc.'s claim brought under the Texas Prompt Payment of Claims Act in Count Four against Defendant Federal

Insurance Company is hereby **DISMISSED with prejudice.**  No further requested relief will be granted, as Counts One, Two, and Three in the First Amended Complaint will remain pending.

     **IT IS SO ORDERED**.

     **SIGNED this 28th day of February, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE